Fhld, J.
In this proceeding, brought to settle their accounts, the successor trustees under the will of Dudley G. Gautier requested and obtained a construction of the will. The controversy revolves about the term “ surviving ” as used in paragraph Ninth, subdivision (b), and calls upon us to say whether the essential survivorship refers to survival merely to the death of the testator, as the courts below held, or, as the two dissenting Appellate Division justices concluded, to the death of the life beneficiary.
Paragraph Ninth of the will disposes of the testator’s entire residuary estate. By subdivision (a) of that paragraph, he gave one half of such residue in fee to his sister Annie Witherbee if, as happened, she survived him. Subdivision (b), with which we are concerned, deals with the disposition of the other half of the residuary estate. The testator directed that that half be divided into eight shares, of which four were to be in trust for his sister Clara Bird for life and, after her death, each of said four shares was to be held as a separate trust for the benefit of her four children, his nephews and nieces, Oliver Bird, Claire Bird Lewis, Dudley Bird and Marie Louise Bird, during the life of each of them. On his or her death, the will continues, “ the one share held in trust for the one so dying shall cease and the share of such nephew or niece shall be paid to his or her children, if any, and in the event that the nephew or niece dies leaving no children the share shall be divided equally amongst his or her brothers and sisters surviving.” The other four shares were given directly, that is, without the intervention of any other life estate, in trust for Oliver, Claire, Dudley and Marie Louise during the life of each, with a provision, identical with that quoted above, as to the disposition of the corpus upon the death of any one of such life beneficiaries.
The testator’s sister Clara, the primary life beneficiary as to four shares, died some years after her brother. Upon her death, trusts were set up for the benefit of each of her children, the named Oliver, Claire, Dudley and Marie Louise. On the death of Oliver and Claire, the corpus of each of the trusts set up for them went to their respective children. Marie Louise *508 died in 1955 leaving no issue and is survived only by Dudley who is still alive. As already indicated, the sole question involved — and it is presented on appeals from two orders, one relating to the trust for Marie Louise and the other to the trust for Dudley — is the meaning to be accorded the word “ surviving” in subdivision (b) of paragraph Ninth.
The testator’s intention as gathered from the will is, of course, controlling and, in seeking it, we must give to his words their natural and ordinary meaning. When so read in this case, there can be no doubt what the testator had in mind. Upon the death of any nephew or niece, he explicitly stated, the share of the one who died was to be paid over to his or her children and, if such nephew or niece died leaving no children, then, that one’s share was to be divided among “his or her brothers or sisters surviving”. Neither this language nor any provision of the will is in the slightest ambiguous. There was a primary remainder to “ children ”, a class determinable solely on the death of the life beneficiary and, if that class failed, the beneficiary’s “brothers or sisters surviving” were substituted. Just as determination of the class, the children who would share in the primary remainder, had to await the time of division and distribution, that is, the death of the childless nephew or niece, so determination of the brothers and sisters, who were to share in the substitutional remainder, had to be postponed until such time. The testator, thus indicating a clear-cut intention to postpone vesting until the termination of each trust, created a remainder contingent upon survival of the life beneficiary.
We would strain language and do violence to the meaning of words were we to read the provision otherwise and ascribe to the decedent a different intention.. As cases very like the present demonstrate, absent language pointing a contrary intention, words of survivorship refer to the time of the testator’s death “ only in the case of an absolute devise or bequest to one and in case of his death to another”; they carry no such implication where, as in the will under consideration, the first devisee or legatee takes a life estate. (Mullarky v. Sullivan, 136 N. Y. 227, 231; see, also, Matter of Parsons, 242 N. Y. 246, 250; Matter of Buechner, 226 N. Y. 440; Matter of Pulis, 220 N. Y. 196, 204; Lyons v. Ostrander, 167 N. Y. 135, 140; *509 Restatement, Property, § 251, p. 1266.) The Restatement sums up the subject in this way (loc. cit.): “ In a limitation purporting to create a remainder or an executory interest, a description of the intended takers as persons ‘ who survive,’ or who are ‘ living,’ or by other language of the same import, but which fails to designate the time to which such takers must survive, tends to establish the time of the termination of all preceding interests as the time to which survival is required ”.
If there could be any doubt as to the meaning which the testator desired to attach to the word “ surviving” in subdivision (b) of paragraph Ninth, it is entirely dissipated by a consideration of subdivision (a). The meaning intended for the term in that subdivision is plain beyond all peradventure, its reference to the date of death of the life beneficiaries, rather than to the testator’s, unmistakable. When he wished distribution to depend on mere survival of himself, he said so in so many words; he gave one half of the residue to his sister Annie if “ she survives me,” and then created trusts for the life of each of her children if “ she shall not survive me.” The scheme of subdivision (a), the pattern of the trusts there created, is the same as that in subdivision (b). The life beneficiaries are his sister’s son and daughter and, as in (b), it is provided that, on the death of his nephew or niece, the share of the one dying shall be paid to his or her children, if any, and, if the nephew or niece dies leaving no children, the share shall be given to 1 ‘ the nephew or niece surviving. ’ ’ Such a provision unquestionably reflected an intention on the part of the testator that, if either his nephew or niece died childless, the other, if still living, was to enjoy the whole trust estate. There just cannot be any question that the testator intended that the remainderman, in order to share in the corpus of the trust, outlive the life beneficiary, not himself. Since, then, the term ‘ ‘ surviving ’ ’ in subdivision (a) relates to the time of the life beneficiary’s death, it must be given the same meaning in subdivision (b).
It is quite true that, in ascertaining the testator’s intention, the will should be considered in its entirety. And, as bearing on that, the respondents point to paragraph Twelfth wherein the testator declared, “ I have not made any provision ” for Charles Gautier, a nephew. If the will be read as we have read it, that nephew (or, more precisely, since he is dead, his estate) will *510 realize an intestate share in Dudley’s trust if Dudley happens to die without children. But that circumstance cannot possibly affect the meaning of the word “ surviving ” found in paragraph Ninth. The testator did not, of course, expect that any of his estate would pass as if he had died intestate. As a general proposition, one who executes a will believes that the testament covers all contingencies that might eventuate. At any rate, if the language employed by the testator is plain and his meaning clear, a court may not rewrite the will in order to avoid intestacy. (Cf. Matter of Disney, 190 N. Y. 128, 131-132; Matter of Englis, 2 N Y 2d 395; also, 3 Jessup-Redfield, Surrogates’ Law and Practice [rev. ed., 1949], § 1929, p. 100.) Although the testator may not have intended that Charles share as legatee or devisee under his will, he evinced no intention that he was to be excluded as next of kin, through operation of the laws dealing with intestacy, if the last survivor of Clara’s children were to die childless and the share of such survivor distributed as intestate property. Consequently, the happenstance that nephew Charles (or his estate) may participate in Dudley’s trust as one of the testator’s next of kin, when the word “ surviving ” is given its natural and normal meaning, cannot warrant giving it a strained and unreasonable meaning or justify a contrary judicial construction solely to prevent such result.
In sum, then, since, of the four nephews and nieces, only Dudley survived the childless Marie Louise, it is he who is entitled to the entire corpus of the trust set up for her benefit and, if Dudley dies without children, the corpus of his trust will pass as in intestacy.
The orders appealed from should be reversed and the matter remitted to the Surrogate’s Court for further proceedings in accordance with this opinion, with costs to all parties appearing separately and filing separate briefs, payable out of the estate.
Chief Judge Conway and Judges Desmond, Froessel, Van Voorhis and Burke concur with Judge Fuld; Judge Dye dissents and votes to affirm.
In each proceeding: Order reversed, etc.